**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **PRUITTHEALTH – MOULTRIE, LLC, f/k/a, UniHealth Post-Acute Care – Moultrie, LLC**, | |
| Plaintiff, | Civil Action No. 7:15-CV-48 |
| v. | |
| **MCHUGH FULLER LAW GROUP, PLLC**, | |
| Defendant. | |

## ORDER

On March 18, 2015, Plaintiff filed suit against Defendant in the Superior Court of Colquitt County. Plaintiff alleges in its complaint that Defendant's local advertising campaign, which purportedly aims to attract the business of consumers dissatisfied by Plaintiff's services, improperly features Plaintiff's registered service mark and trade name. Concerned that the advertisements may dilute Plaintiff's service mark and result in injury to Plaintiff's business reputation, Plaintiff initiated the lawsuit to obtain temporary and permanent injunctive relief and to forestall further negative ads by Defendant. Defendant removed the case to this Court on March 26, 2015 on the basis of diversity jurisdiction. Presently before the Court is Plaintiff's Motion for Remand. (Doc. 6). Upon consideration, the Court grants Plaintiff's motion and remands the case to the Superior Court of Colquitt County for further adjudication.

## I.    BACKGROUND

Plaintiff PruittHealth-Moultrie, LLC, f/k/a, UniHealth Post-Acute Care – Moultrie, LLC, operates a skilled nursing facility located in Moultrie, Georgia. On March 18, 2015, Plaintiff filed a Verified Complaint for Ex Parte Temporary Restraining Order and Preliminary and Permanent Injunctive Relief (Doc. 1-1) against Defendant McHugh Fuller Law Group, PLLC in the Superior Court of Colquitt County to curtail the impact of Defendant's alleged aggressive advertising campaign, which Plaintiff contends was designed to procure business from Plaintiff's nursing home patients and their families. Plaintiff alleges that Defendant ran a full-page color advertisement in the Sunday, March 15, 2015 print edition of *The Moultrie Observer* implying that consumers residing in Plaintiff's facilities have suffered abuse and neglect and experienced bedsores, broken bones, unexplained injuries, and even death. (Id., ¶¶ 12, 16). A similar advertisement appeared on the newspaper's website. (Id., ¶ 13). According to Plaintiff's complaint, Defendant's advertisement depicts both Plaintiff's registered service mark and trade name, which Defendant failed to obtain consent to utilize. (Id., ¶¶ 14, 15). Plaintiff avers Defendant's advertising campaign likely will result in injury to Plaintiff's business reputation and dilution of Plaintiff's distinctive service mark and trade name. (Id., ¶¶ 14, 15). Plaintiff's Complaint seeks only injunctive relief and makes no prayer for damages beyond the costs of litigation.

2

On March 18, 2015, Judge Brian A. McDaniel for the Superior Court of Colquitt County entered an Order Granting Ex Parte Temporary Restraining Order (Doc. 1-6) and scheduling a hearing for March 31, 2015 to determine whether injunctive relief should continue. Defendant removed the case to this Court on March 26, 2015 on the basis of diversity jurisdiction, alleging that the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. 1). Plaintiff now moves the Court to remand the case back to the Superior Court of Colquitt County, arguing that it seeks only injunctive relief and not monetary damages. According to Plaintiff, any assessment of the value of the relief sought by Plaintiff is speculative and insufficient as a matter of law to satisfy the jurisdictional requirements of 28 U.S.C. § 1332.

## II.    DISCUSSION

Under 28 U.S.C. § 1441(a), a party may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." "Federal courts are courts of limited jurisdiction." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Bearing this limitation in mind, in order to invoke a federal court's diversity jurisdiction, the removing party must demonstrate that the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; see Williams v. Best Buy Co., 262 F.3d 1316, 1319-20 (11th Cir. 2001).

3

Here, the parties do not dispute that they are of diverse citizenship. Accordingly, the only question remaining before the Court is whether Defendant has met its burden of proving by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional minimum.

A defendant seeking to invoke removal must file a notice of removal "containing a short and plain statement of the grounds for removal," including an allegation addressing the purported amount in controversy. 28 U.S.C. § 1446(a). The Supreme Court recently explained that when reviewing a notice of removal, the defendant's "amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547, 553 (2014). However, when a plaintiff disputes the amount in controversy allegation, the district court must find "'by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." Id. at 553-54 (quoting 28 U.S.C. § 1446(c)(2)(B)).

Long standing Eleventh Circuit precedent further dictates that "the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." Dudley v. Eli Lilly and Co., 778 F.3d 909, 913 (2014) (citing S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th Cir. 2014); Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010); Miedema v. Maytag Corp., 450 F.3d 1322, 1330 (11th Cir. 2006)). The Dudley Court additionally instructs that,

> in making this calculation, a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence. A removing defendant is not required to prove the amount beyond all doubt or to banish all uncertainty about it. Moreover at the jurisdictional state, the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.

Id. (internal quotations and citations omitted).

The burden of proof does not change where, as here, a plaintiff seeks only injunctive or declaratory relief. The removing defendant remains obliged to "prove that the value of the injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiff if the injunction were granted." D and R Pary, LLC v. Party Land, Inc., 406 F.Supp 2d 1382, 1384 (N.D. Ga. 2005) (quoting Williams, 269 F.3d at 1319) (internal punctuation omitted)). The monetary value shall be measured from the plaintiff's perspective. Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003). Subject matter jurisdiction will not lie where any benefit the plaintiff may receive as a result of the injunction is "too speculative and immeasurable to satisfy the amount in controversy requirement." Leonard v. Enterprise Rent A Car, 279 F.3d 967, 973 (11th Cir. 2002).

Defendant has not met its burden of proving by a preponderance of the evidence that the amount in controversy in this case exceeds the $75,000 jurisdictional threshold. It is evident from Plaintiff's complaint that Plaintiff seeks

only injunctive relief and not monetary damages. Therefore, the burden is upon Defendant to prove from Plaintiff's perspective the value of the harm that will be prevented by granting the equitable relief requested by Plaintiff.

In its complaint, Plaintiff alleges that Defendant impermissibly utilized Plaintiff's service mark and trade name in a local advertisement. (Doc. 1-1, ¶¶ 14-15). According to Plaintiff, in the absence of injunctive relief, Defendant's advertising campaign likely will result in injury to Plaintiff's business reputation and dilution of Plaintiff's service mark. (Id., ¶ 16). The complaint places no monetary value on any possible loss either already incurred or anticipated by Plaintiff and demands no specific damages. Instead, the only remedy Plaintiff seeks is an injunction to stop Defendant's continued publication of the advertisement in question.

Defendant maintains that the amount in controversy is evident from the face of the complaint based solely on the size of Plaintiff's corporation, which Defendant claims is worth $75,000, at a minimum. Alternatively, Defendant attempts to estimate the value of any loss Plaintiff may sustain to its trade name, service mark, and business reputation by approximating the value of Plaintiff's business or the goodwill of Plaintiff's trademark. Defendant argues that the valuation may be measured by the number of available beds in Plaintiff's Moultrie facility multiplied by the median cost for each nursing home resident as reported by the United States Department of Health and Human Services.

In support of these assertions, Defendant cites to two Fifth Circuit opinions for the proposition that "[i]n trademark cases, the amount in controversy generally is determined by the value of the business or goodwill of the company holding the trademark." (Doc. 18, p. 4-5); citing Miami Credit Bureau, Inc. v. Credit Bureau, Inc., 276 F.2d 565, 568 (5th Cir. 1980); Seaboard Fin. Co. v. Martin, 244 F.2d 329, 331 (5th Cir. 1957).[1] These cases are inapposite to the matter presently before the Court. Review of the cases relied on by Defendant reveals that while the Fifth Circuit acknowledges that some jurisdictions recognize that the amount in controversy for a suit seeking injunctive relief as redress for an alleged infringement of a trade name is the value of the good will of the business, the Court specifically declined to rely on that particular proposition of law. Miami Credit Bureau, 276 F.2d at 568; Seaboard, 244 F.2d at 331. In Seaboard, the Court even noted that the "good will represented by a corporate name or a trade name is intangible and difficult of exact description or valuation." 244 F.2d at 331. Rather than attempting to divine an appropriate valuation, in both cases the Court instead concluded that there was other reliable evidence presented to the trial court pertaining to the jurisdictional amount. Id. ("The averments of the present complaint are, we think amply sufficient to put the parties to their proof as to whether the actual amount in controversy exceeds" the jurisdictional

---

[1] Fifth Circuit decisions issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

requirement.); <u>Miami Credit Bureau</u>, 276 F.2d at 568 ("However, we need not rely on such a proposition in view of the trial court's finding that the jurisdictional amount was directly involved.").

The Court is not convinced by Defendant's argument that the harm that will be prevented by the injunctive relief sought by Plaintiff may be calculated based on the net value of Plaintiff's business. The Court concludes that any benefit Plaintiff may derive from the injunction is too speculative and immeasurable. Because Defendant is unable to place a pecuniary value on the speculative benefit pursued by Plaintiff, the Court finds that Defendant cannot satisfy its burden of proving by a preponderance of the evidence that the amount in controversy in this case exceeds the $75,000 requirement of § 1332.

In an effort to fill any evidentiary gaps, Defendant makes a final plea to the Court to permit jurisdictional discovery.[2] The Eleventh Circuit has emphatically stated that a district court should not disrupt the "careful assignment of burdens and the delicate balance struck by the underlying rules" by inserting itself "into the fray by granting leave for the defendant to conduct discovery":

---

[2] Following the filing of Plaintiff's motion to remand, Defendant presented a Motion for Expedited Discovery (Doc. 9), requesting the opportunity to gather additional evidence necessary to defend the motion. The Court conducted a telephone conference on April 13, 2015, to address this motion and several others pending in the case. Defendant's motion to conduct post-removal discovery was summarily denied at that time. (Doc. 10).

> Post-removal discovery for the purpose of establishing jurisdiction in diversity cases cannot be squared with the delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and underlie them. Certainly, the power to grant discovery generally is conferred to the sound discretion of the district court, and post-removal jurisdictional discovery may appear to present a viable option for a court examining its jurisdiction. Jurisdictional discovery could avoid the problem of speculation by the court. Sound policy and notions of judicial economy and fairness, however, dictate that we not follow this course.

Lowery v. Ala. Power Co., 483 F.3d 1184, 1215-16, 1218 (11th Cir. 2007). Defendant's renewed request to conduct post-removal discovery is, accordingly, denied.

## III.   CONCLUSION

Finding that Defendant failed to satisfy its burden of proving the amount in controversy requirement of 28 U.S.C. § 1332 by a preponderance of the evidence, the Court concludes that it lacks subject matter jurisdiction to entertain this case and grants Plaintiff's Motion to Remand. (Doc. 6). This case is remanded to the Superior Court of Colquitt County.

**SO ORDERED** this 3rd day of November, 2015.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks